IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| National Specialty Insurance Company, individually and as an assignee of Trans Select d/b/a Select Transport Systems a/k/a Tran Select d/b/a Transport Systems, | ) ) ) ) ) ) ) ) | |
| | ) | C/A No. 6:10-826-TMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **OPINION & ORDER** |
| | ) ) ) | |
| National Union Fire Insurance Company of Pittsburgh Pa., | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on Defendant National Union Fire Insurance Company's ("National Union's") Motion for Summary Judgment (Dkt. # 92). Plaintiff National Specialty Insurance Company ("National Specialty") filed a response opposing the motion. (Dkt. # 95). On March 12, 2012, a hearing was held on this matter and the court took the motion under advisement. For the reasons set forth below, National Union's Summary Judgment Motion is granted in part and denied in part.

**Background/Procedural History**

Prior to 2004, Trans Select or Select Transport Systems ("Trans Select"), a trucking company, insured its fleet of trucks with insurance policies issued by National Specialty using the Jamison Group as its insurance agent. Sometime in 2004, when Trans Select leased two new trucks, it notified the Jamison Group that it wanted to add

the two new trucks to its policy. However, the trucks were never added to Trans Select's policy. Subsequently, the new trucks were involved in separate accidents: 1) April 5, 2004 in Ohio ("April/Ohio accident") and 2) Oct. 30, 2004, in Texas ("October/Texas accident") and National Specialty disclaimed coverage for the two accidents. However, pursuant to the operation of the Federal Motor Carrier Safety Administration regulations, National Specialty remained liable and ultimately paid $277,500 to settle claims arising out of the April/Ohio accident and $105,574.62 for the October/Texas accident.

On June 11, 2007, National Specialty filed an action against the Jamison Group and its employee, Marvin Williams, in state court, *Nat'l Specialty Ins. Co. v. The Jamison Group, Inc.*, 2007-CP- 23-3705, ("Underlying Suit").[1] The Jamison Group had gone out of business in August 2006 and National Specialty obtained a default judgment against only the Jamison Group in the amount of $417,434.56, which included the $383,074.62 settlement payments plus costs, fees, and interest. Pursuant to professional liability errors and omission ("E&O") insurance policies, National Specialty is now seeking to recover from National Union for the default judgment which was entered in the Underlying Suit

National Union issued several E&O insurance policies to the Jamison Group. One of the relevant policies covered the period of February 12, 2004, to February 12, 2005, and a subsequent policy began February 12, 2006. The parties dispute whether the Jamison Group's last E&O policy with National Union ended on September 6, 2006, or February 12, 2007. However, National Union states, for the purposes of this motion, it

---

[1]National Specialty alleges that because it was forced to settle the claims from the accidents on behalf of Trans Select, Trans Select became liable to National Specialty. Trans Select assigned its rights against its agents, the Jamison Group and Williams, to National Specialty.

2

will rely on National Specialty's contention that the policy ended on the later date, February 12, 2007.

On January 3, 2005, National Specialty through Jim Spencer, a third party claims administrator, sent a letter to Williams at the Jamison Group stating that a claim had been submitted regarding the October/Texas accident and there "appears to be no coverage for [the] loss." As the trucks were never added to Trans Select's policy as requested, Spencer asked the Jamison Group to contact its E&O carrier. (Dkt. # 95-2). On January 5th, Williams responded to Spencer's letter stating that he felt that the accident should be covered and that Spencer may have overlooked "the provision in the policy for newly acquired vehicles and the 30-day time frame in which that may be added." (Dkt. # 95-3). Spencer did not respond to Williams' letter until May 24th. (Dkt. # 95-5). In this letter, Spencer apologized for his delay in responding and then explained that the 30-day grace period for newly acquired vehicles applied only to owned vehicles and the truck involved had been leased. *Id*. Spencer then stated if Williams felt that Spencer had overlooked any other policy provision to let him know, but otherwise, he should contact his E&O carrier. *Id*. The claim was first reported to National Union on June 7, 2005. The April/Ohio accident was first reported to National Union in July 2007 after National Specialty filed the Underlying Suit.

National Specialty alleges causes of action for breach of contract, bad faith refusal to pay insurance benefits, and negligence. National Specialty also seeks an order from the court declaring that the E&O insurance policy issued by National Union to the Jamison Group provides coverage for the default judgment that National Specialty obtained against the Jamison Group in the Underlying Suit. National Union asserts that the loss litigated in the Underlying Suit was not covered by any National Union policy.

3

## Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the

nonmoving party's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**Discussion**

In regard to the October/Texas accident, National Union contends that the January 3, 2005 letter from Spencer on behalf of National Specialty to the Jamison Group placed a reasonable person on notice of a potential claim and the Jamison Group's failure to report the claim in writing at that time precluded coverage. Additionally, National Union contends that the E&O policy excludes wrongful acts committed prior to the beginning of the policy if the insured knew or could have reasonably foreseen that a prior wrongful act could lead to a claim. National Specialty contends that the Jamison Group acted reasonably in not reporting the October/Texas accident until June 7, 2005, and the policy's prior knowledge exclusion is inapplicable because Williams believed the truck should have been covered under the "newly acquired vehicle" provision.[2]

---

[2]The court notes that National Specialty's alternative argument that Williams would have called Bill Holland, the alleged agent of National Union, and Holland would have told Williams that he did not need to report the claim to the E&O carrier or that such a conversation was a reporting of the potential claim to National Union is entirely too speculative to defeat National Union's summary judgment motion. There is no evidence that Williams ever actually called Holland and to then speculate as to how Holland would have responded is purely conjecture. Mere speculation cannot establish a genuine issue of material fact. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir.1992) (recognizing that a nonmoving party cannot rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment). Additionally, the court notes that National Union disputes that Holland was its agent.

Specifically, National Union contends that National Specialty must prove that the accident was reported in writing to National Union during the policy period of February 12, 2004, to February 12, 2005, when Policy 937-66-88 was in effect.[3] National Union contends that in issuing Policy 490-35-02 in February 2005, it relied upon the Jamison Group's representation that it had no knowledge of any incident which might result in a claim being made. The Jamison Group circled "no" in response to the following question on the application dated January 11, 2005:

> Does any prospective Insured have knowledge or information of any circumstances or any allegations or contentions of any incident which may result in any claim being made against the applicant or any of its past or present partners, executive officers, directors, salespersons (whether employees or independent contractors), employees, or any predecessors in business?

(Dkt. # 46-3 at 26). Further, National Union argues that Policy 490-35-02 excluded "any Wrongful Act committed prior to the beginning of the Policy Period, if on or before the inception date of this policy any Insured knew or could have reasonably foreseen that such Wrongful Act did or could lead to a claim or suit." (Dkt. # 46-3 at 7). "Wrongful Act"

---

[3]Policy 937-66-88 provides:

> The Insured, shall, as a condition precedent to the availability of the rights provided under this policy, give written notice to the Company as soon as practicable during the Policy Period, or during the extended reporting period (if applicable), of any claim made against the Insured. Notice given by or on behalf of the Insured to any authorized representative of the Company, with particulars sufficient to identify the Insured, shall be deemed notice to the Company, or:

> Within sixty (60) days after the end of the Policy Period or the Extended Reporting Period (if applicable), as long as such claim(s) is reported no later than thirty (30) days after the date such claim was first made against an Insured.

(Dkt. # 46-2 at 21).

6

is defined, in pertinent part, as "any actual or alleged negligent act, error or omission." (Dkt. # 46-3 at 6). National Union argues that the prior knowledge exclusion is not contingent on whatever claims the insured in his subjective judgment deems reasonable, but rather it is contingent on an objective standard of reasonableness and foreseeability.

National Specialty argues that Williams acted reasonably in not reporting the October/Texas accident claim until June 2005 and not raising this as a potential claim on the insurance application dated January 11, 2005, because Williams believed that there was coverage for the new leased truck under the newly acquired vehicle provision. National Specialty contends whether Williams acted reasonably is a question of fact.

Neither of the parties nor the court have found any Fourth Circuit cases dealing with this specific issue. However, the United States Court of Appeals for the Third Circuit in *Seiko v. Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998), *followed in Coregis Ins. Co. v. Baratta & Fenertv*, Ltd. 264 F.3d 302 (3rd Cir. 2001), which is cited by National Union, developed a mixed two-part subjective/objective analysis to determine whether a professional liability policy's similarly-worded exclusion applied. First, the court is to consider whether the insured had actual knowledge of the underlying facts which are the basis of the claim (subjective), and second, would a reasonable insured in possession of such facts have a basis to believe that these facts could constitute a claim (objective). In this case Williams clearly knew the underlying facts because of the January 3rd letter about the claim. However, the pivotal issue is whether a reasonable insurance agent with this knowledge would believe that these facts could constitute a claim.

"[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the "reasonable man" standard is thought ordinarily to preclude summary judgment.'" *TSC Industries v.*

7

*Northway, Inc.*, 426 U.S. 438, 450 n. 12 (1976)). *See also* 10 Wright, Miller & Kane, Federal Practice and Procedure, § 2729 (2d ed.1983). Here, the court cannot find that no rational jury could conclude that Williams did not act reasonably. There is a genuine issue of material fact as to the reasonableness of Williams' actions relating to the October/Texas accident.[4] Accordingly, summary judgment is denied as to this claim.

In regard to the April/Ohio accident, a claim was first made against the Jamison Group in July 2007. National Union contends no claims were made between February 12, 2005, and February 12, 2006, when policy number 490-35-02 was in effect nor between February 12, 2006, and February 12, 2007, when policy number 625-94-89 was in effect. National Union argues that since there was no insurance contract in effect in July 2007, National Union had no obligation to provide insurance coverage to the Jamison Group.

National Specialty contends that the reporting of this claim "would have been within National Union's policy for 2006-2007 - with the 365-day extended reporting period - if Defendant's had not terminated the policy in a manner contrary to the statutory law of South Carolina, thereby wrongfully refusing Jamison the benefit of the extended reporting period." (Pl.'s Mem. at 9-10). National Specialty argues that because the insurance policy was financed through a premium service company, S.C. Code Ann. § 38-39-90 is applicable to its cancellation. Section 38-39-90 (b) provides:

> b) The premium service company shall deliver to the insured

---

[4]The court notes that the parties have argued extensively regarding whether expert evidence is allowable to establish reasonableness in this case. Even if the court were to exclude such expert testimony, the court concludes that based on the record, there remains a genuine issue of fact as to whether Williams acted reasonably. However, at this time, and in the absence of any motion, the court declines to rule whether Thomas Hesse is an expert as to the reasonable man standard and whether his opinion should be excluded pursuant to Rule 702, Fed. R. Evid.

> at least ten days' written notice of its intent to cancel the insurance contract if there is a default. This notice must be mailed or delivered not more than ten days before the due date.

National Specialty contends that there is no evidence that the ten-day notice of intent to cancel was delivered to the Jamison Group and therefore the cancellation of the Jamison Group's policy for 2006-2007 is invalid. National Specialty then argues National Union denied the Jamison Group the right to extend further coverage from February 12, 2007 to February 12, 2008, under a "tail" policy.

For the purposes of this motion, National Union concedes that the policy period ended on February 12, 2007. Therefore, the court need not address whether National Union improperly cancelled the insurance in September 2006 in violation of S.C. Code Ann. 38-39-90. The issue then is whether National Union denied National Specialty the right to extend coverage through February 12, 2008, through the purchase of a "tail" policy. "Tail coverage is insurance coverage that becomes effective upon the cancellation or termination of a policy. The coverage applies to all claims that arise during the primary policy period but are not asserted until after the stated policy period expires." *In re Lavigne*, 114 F.3d 379, 382 (2d Cir. 1997).

Importantly, the court notes that the Jamison Group went out of business in August 2006. While, as argued by National Specialty, tail insurance coverage is commonly purchased by principals in a closed business, there is no evidence that the Jamison Group or its principals intended to purchase such insurance. National Specialty contends that "it is anticipated that either Williams or Chris Parnell, the principal of Jamison, may testify that he would have purchased the 365-day period of extended coverage if given the opportunity . . . " (Pl.'s Mem. at 12). Anticipating that someone may testify a certain way is too tenuous to support National Specialty's claim. *See Baber*, 977 F.2d at 874–75

(recognizing that a nonmoving party cannot rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment). There is simply no evidence that the Jamison Group would have extended its coverage beyond February 12, 2007. Accordingly, the court grants National Union summary judgment on National Specialty's April/Ohio claims.

In regard to National Specialty's bad faith refusal claim, National Union contends that there was no insurance contract that would have provided coverage for these claims. Citing *Tadlock Painting Co. v. Maryland Casualty Co.*, 473 S.E.2d 52 (S.C. 1996), National Specialty argues that "a bad faith action may be brought against an insurance company for bad faith in the handling of an insurance claim, regardless of whether the insured had coverage or even had a contract with the insurer." (Pl.'s Mem. at 12). National Specialty contends the question of whether National Union acted in bad faith is a disputed issue of material fact.

Under South Carolina Law, the elements of an action for bad faith refusal to pay benefits under an insurance contract include: "(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured." *Cock-N-Bull Steak House, Inc. v. Generali ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996)(*citing Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (S.C. 1992). Furthermore, a bad faith claim may exist even in the absence of any violation of an insurance contract provision, as "the benefits due an insured are not limited solely by those expressly set out in the contract." *Tadlock Painting Co.*, 473 S.E.2d 52, 55. "[I]f an insured can demonstrate bad faith or

10

unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Tadlock*, 473 S.E.2d at 53 (internal quotation omitted). However, "if there was an objectively reasonable ground for contesting an insurance claim, there is no bad faith in the denial of it. Whether such an objectively reasonable basis for denial existed depends on the circumstances existing at the time of the denial." *Shiftlet v. Allstate*, 451 F.Supp. 763, 772 (D.S.C. 2006)(internal citations omitted). When conflicting evidence is presented, summary judgment on a bad faith claim is generally inappropriate. However, a court may grant summary judgment on this claim if, viewing the evidence in the light most favorable to the plaintiff, no reasonable finder of fact could find for the plaintiff on the bad faith claim. *Id.*

Here, for the same reason the court grants summary judgment to National Union as to the coverage claims relating to the April/Ohio claims, National Union is also granted summary judgment as to National Specialty's bad faith claim relating to the April/Ohio claims. Viewing the evidence in a light most favorable to National Specialty, National Union had an objectively reasonable ground for contesting the April/Ohio claims. There is simply no evidence, other than conjecture, that the Jamison Group or its principals would have purchased a tail policy which would have provided coverage beyond February 2007. Accordingly, the court grants National Union summary judgement on National Specialty's bad faith claim in regard to the April/Ohio accident.

As for the October/Texas accident, the court denies National Union summary judgment because, as discussed above, there is a genuine issue of fact as to whether there was coverage and there is also a genuine issue of material fact as to whether National Union acted in an objectively reasonable manner in denying coverage for this

11

claim.

## Conclusion

National Union is granted summary judgment on the claims related to the April/Ohio accident and denied summary judgment on the claims related to the October/Texas accident. Accordingly, Defendant National Union's Summary Judgment Motion (Dkt. # 92) is **GRANTED in part and DENIED in part**. The parties shall submit to the court a joint proposed scheduling order for the remainder of the case within ten (10) days of this order.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Greenville, South Carolina
May 18, 2012